DIANE COLLINS *v.* MARK COLLINS
(AC 28172)
(AC 30037)

Lavine, Robinson and Schaller, Js.

Argued June 1—officially released September 29, 2009

*Mark Collins*, pro se, with whom, on the brief, was *David M. Wallman*, for the appellant (defendant).

*Brenden P. Leydon*, for the appellee (plaintiff).

*Louise T. Truax*, for the minor children.

SCHALLER, J. These two appeals arise from the dissolution of the parties' marriage. In AC 28172, the defendant, Mark Collins, appeals from the trial court's pendente lite order granting the plaintiff, Diane Collins, exclusive possession of the marital home. In AC 30037, the defendant appeals from the final judgment of dissolution. We dismiss the appeal in AC 28172 and affirm the judgment of the trial court in AC 30037.

The following facts and procedural history are relevant to the defendant's appeals. The plaintiff commenced the dissolution action on September 22, 2005. On February 24, 2006, while the action was pending, the plaintiff moved for exclusive use and possession of the parties' marital home on the ground that the defendant had been threatening her and their two minor children. Following a contested hearing, the court, *Hon. Dennis F. Harrigan*, judge trial referee, denied the plaintiff's motion for exclusive possession on March 16, 2006. On July 12, 2006, the plaintiff filed another motion for exclusive use and possession of the marital home. The court, *Schofield, J.*,[1] granted the motion on October 10, 2006, and ordered the defendant to vacate the marital home by October 30, 2006. As part of that order, the court limited the defendant's visitation with the children to two nights per week. On October 26, 2006, the defendant filed a motion to reargue the court's ruling. On October 27, 2006, the defendant filed an appeal (AC 28172) from the court's ruling.

On October 31, 2006, while the defendant's motion to reargue and appeal were pending, the defendant filed an emergency motion for a stay of the order granting the plaintiff exclusive possession of the marital home. This court denied the motion for an emergency stay on

---

[1] Judge Schofield was formerly known as Judge Black.

the same day. On November 3, 2006, the court, *Schofield, J.*, granted the defendant's motion to reargue but denied the relief requested, thereby leaving intact the order granting exclusive possession of the marital home to the plaintiff. On the same day, the court determined that no stay of execution was available. On November 13, 2006, the defendant filed a motion for review of the trial court's November 3, 2006 order with respect to the automatic stay. This court granted the motion but denied the relief requested therein.

This court then placed the defendant's appeal on the court's motion calendar for February 28, 2007, and ordered counsel to appear and to give reasons, if any, why the defendant's appeal from the pendente lite order for exclusive possession of the marital home should not be dismissed for lack of a final judgment. On February 13, 2007, the plaintiff moved to dismiss the appeal from the pendente lite order as moot on the ground that the defendant had vacated the marital home and for lack of a final judgment for the reasons raised by this court. The defendant opposed the motion, arguing that the pendente lite order was immediately appealable because it affected the amount of time that he could spend with his children. The defendant also claimed that he vacated the marital residence only because he did not want to be held in contempt. We advised the parties to be prepared to address the plaintiff's motion to dismiss in addition to the final judgment questions at the February 28, 2007 hearing. On the day of the hearing, we marked the court's motion off and denied the plaintiff's motion to dismiss the appeal as moot but denied the motion without prejudice as to the final judgment claim.

On January 28, 2008, the defendant filed his brief with respect to AC 28172. In his brief, the defendant claimed that the trial court's order regarding exclusive possession of the marital home was a final judgment

for purposes of appeal and that the order was improper because Judge Schofield permitted the plaintiff to attack collaterally the prior final judgment rendered by Judge Harrigan by granting the identical motion for exclusive possession. The defendant requested that the court's pendente lite order be reversed.

On May 19, 2008, the court, *Bozzuto, J.*, rendered judgment dissolving the parties' marriage by way of a memorandum of decision. The court awarded sole and primary residential custody of the minor children to the plaintiff. The court awarded the defendant visitation with the children pursuant to the following regular access schedule: "Every Wednesday after school, or if school is not in session, from 3 p.m. until 7 p.m. . . . Every other Friday after school, or if school is not in session, from 3 p.m., overnight until 3 p.m. on Saturday . . . . On weekends wherein the defendant does not have an overnight, then from Saturday at 3 p.m. to 8 p.m."[2] The court also ordered the parties immediately to list the marital residence for sale and to divide evenly the proceeds of the sale. Until the sale of the marital residence, the plaintiff was to have the exclusive right to use and to occupy it as her residence.

On June 9, 2008, the defendant filed an appeal, AC 30037, from the judgment of dissolution. On July 8, 2008, the plaintiff filed a motion to dismiss the defendant's first appeal, AC 28172, as moot, alleging that the pendente lite order for exclusive possession of the marital home had terminated upon entry of the final judgment of dissolution. The defendant opposed the motion, arguing that his first appeal fell into the "capable of repetition, yet evading review" exception to the mootness doctrine. See *Loisel* v. *Rowe*, 233 Conn. 370,

---

[2] The defendant also was awarded two nonconsecutive summer vacation periods with the children, five days duration each; one of the children's two school vacations, which occurred in February and April; and certain holidays.

378, 660 A.2d 323 (1995). On October 15, 2008, this court denied the plaintiff's motion to dismiss without prejudice and ordered the defendant to file a supplemental brief in AC 28172, addressing the issue of whether it was rendered moot by the entry of judgment subsequent to the appeal. This court further ordered the plaintiff to address the mootness issue in her brief on the merits of the appeal.

On October 31, 2008, the defendant filed his supplemental brief, in which he again argued that the entry of the final judgment of dissolution did not render his first appeal moot because the claims therein were capable of repetition, yet evading review. On December 2, 2008, the plaintiff filed her brief in appeal AC 28172.[3] In her brief, the plaintiff argued that the court's pendente lite order regarding exclusive possession of the marital home was rendered moot by the subsequent final judgment of dissolution, thus depriving this court of subject matter jurisdiction. The plaintiff further argued that the order regarding exclusive possession of the marital home was proper, supported by the evidence and within the court's discretion.

On January 8, 2009, the defendant filed his brief in AC 30037. In his brief, the defendant claimed essentially that Judge Bozzuto's final order of custody, as provided in the May 19, 2008 memorandum of decision, was unduly and improperly influenced by: (1) the pendente lite order regarding exclusive possession of the marital home (2) a pendente lite order regarding the requirement that the defendant seek employment and (3) the court's incorrect conclusions as to the minor son's medical condition. On March 20, 2009, the plaintiff filed her brief in AC 30037.[4] Additional facts will be set forth as necessary.

---

[3] The attorney for the minor children, pursuant to Practice Book § 67-13, adopted the plaintiff's brief.

[4] The attorney for the minor children also filed a brief in AC 30037.

I

AC 28172

This appeal is from Judge Schofield's pendente lite order granting the plaintiff exclusive possession of the marital home. The defendant concedes that because that order ceased to exist once Judge Bozzuto rendered the final judgment of dissolution, we can give no practical relief, and the defendant's appeal should be dismissed as moot. See *Sweeney* v. *Sweeney*, 271 Conn. 193, 200, 856 A.2d 997 (2004). The defendant nevertheless urges that we consider the merits of the appeal because the claims therein satisfy the "capable of repetition, yet evading review" exception to the mootness doctrine.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citation omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 373–74, 944 A.2d 276 (2008).

"The mootness doctrine is rooted in the first factor of the *Nardini* test. . . . It is founded on the same policy interests as the doctrine of standing, namely, to

assure the vigorous presentation of arguments concerning the matter at issue. . . . This court recently reiterated that the standing doctrine is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Indeed, we note that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . .

"[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) Id., 374.

This does not end our analysis, however, because an otherwise moot question may qualify for review under the "capable of repetition, yet evading review" exception to the mootness doctrine. To qualify for review under that exception, an otherwise moot question must meet three requirements. "First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, supra, 233 Conn. 382–83.

"The first element in the analysis pertains to the length of the challenged action. . . . The basis for this element derives from the nature of the exception. If an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced." (Citations omitted.) Id., 383–84. "[A] party typically satisfies this prong if there exists a 'functionally insurmountable time [constraint] . . . .' "; *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 367, 957 A.2d 821 (2008); or "the challenged action had an intrinsically limited lifespan." *Loisel* v. *Rowe*, supra, 383.

In *Sweeney* v. *Sweeney*, supra, 271 Conn. 202, our Supreme Court concluded that "the nature of a pendente lite order, entered in the course of dissolution proceedings, is such that its duration is inherently limited because, once the final judgment of dissolution is rendered, the order ceases to exist." "Although we recognize that dissolution proceedings may vary as to their relative length, there is a strong likelihood that, as compared to the time necessary to conclude appellate litigation, a substantial majority of cases raising a challenge to a pendente lite order entered in the course of dissolution proceedings will become moot prior to final appellate resolution." Id. Accordingly, the defendant's appeal has satisfied the first requirement of *Loisel*.

Analysis under the second requirement "entails two separate inquiries: (1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation." *Loisel* v. *Rowe*, supra, 233 Conn. 384. "A requirement of the likelihood that a question will recur is an integral

component of the 'capable of repetition, yet evading review' doctrine. In the absence of the possibility of such repetition, there would be no justification for reaching the issue, as a decision would neither provide relief in the present case nor prospectively resolve cases anticipated in the future." Id.

In the present case, the defendant concedes that issues surrounding exclusive possession of the marital home will not arise again because the final judgment of dissolution ordered the home to be sold. The defendant argues, however, that issues surrounding parenting time are likely to arise again in the future because "[i]t is highly likely that in the future [he] will seek to increase the amount of parenting time with his children and seek more involvement in the decision-making that are the essence of custodial rights. It is virtually certain that [at that time] . . . [the pendente lite] order will be cited by the [plaintiff] to support what she perceives as the beneficial impact [of] the limited access and decision-making . . . ."

The defendant relies on *Sweeney* in support of his argument. In *Sweeney*, the defendant appealed from a pendente lite order granting the plaintiff permission to enroll the parties' minor child in parochial school. *Sweeney* v. *Sweeney*, supra, 271 Conn. 195. The defendant conceded that his appeal was moot because while it was pending, a final judgment of dissolution was entered, and the parties had reached an agreement that the child would attend public school for the upcoming school year.[5] Id., 200. The defendant argued, however,

[5] Our Supreme Court stated: "Counsel for the defendant stated at oral argument before this court that the parties had entered into the agreement regarding the educational enrollment of the minor child for one year because the question of schooling had been the sole issue outstanding in the dissolution proceedings, and the parties had been desirous of concluding the proceedings expeditiously rather than prolonging the dissolution proceedings over one issue." *Sweeney* v. *Sweeney*, supra, 271 Conn. 206 n.7.

that the question presented in the appeal was capable of repetition, yet evading review. Id. The Supreme Court agreed, concluding that "[n]otwithstanding [the parties'] agreement, the defendant's counsel [at oral argument] indicated that the issue as to where the minor child would be enrolled following the year in public school remains a source of contention between the parties. Accordingly, it is reasonably likely that the same question presented in [the] appeal will arise again between these parties." Id., 206.

The present case is distinguishable from *Sweeney*. In *Sweeney*, the parties had a one year agreement as to the minor child's education. The issue as to where the child would be enrolled after that year had not been settled in the final judgment of dissolution. It was clear, therefore, that the question presented in the defendant's appeal from the pendente lite order, i.e., whether the child should receive religious education, was going to arise again in the future. In the present case, should the defendant seek to alter the current custody arrangement, he will have to move to modify the terms of the final judgment of dissolution pursuant to General Statutes § 46b-56.

General Statutes § 46b-56 provides in relevant part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may [at any time] make or modify any proper order regarding . . . custody . . . [and] visitation . . . . (c) In making or modifying any order [with respect to custody or visitation], the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the

child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. . . ."

Moreover, "[i]n making a determination of custody . . . the trial court is bound to consider the [children's] *present* best interests and not what would have been

in [their] best interests at some previous time." (Emphasis in original; internal quotation marks omitted.) *Blake* v. *Blake*, 207 Conn. 217, 224, 541 A.2d 1201 (1988). In *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 303, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), this court concluded that the trial court improperly awarded sole custody of the minor child to the defendant because it relied on outdated evidence, namely, the plaintiff's past medical history and a thirteen month old family relations custody report, which were not probative of present parenting abilities and the present best interests of the child. "We recognize that a party's prior conduct . . . may have a direct bearing on his or her present fitness to be a custodial parent. . . . At the same time, however, the focus of the court's inquiry must be designed to meet the primary objective which is to determine the present parenting ability of the parties." (Citation omitted.) Id., 304.

Consequently, should the defendant in this case seek a modification of the custody order in the future, the court, in deciding that motion, will be bound to consider a number of factors and the circumstances that exist *at that time*. It is, therefore, merely speculative that the circumstances surrounding the pendente lite order will have any future effect.[6] Because there is not a reasonable likelihood that the question presented in the defendant's appeal will arise again, the defendant has not satisfied the second prong of *Loisel*, and the "capable of repetition, yet evading review" exception to the

---

[6] For this reason, the collateral consequences exception to the mootness doctrine, to the extent that it is argued by the defendant, is also inapplicable. In *State* v. *McElveen*, 261 Conn. 198, 802 A.2d 74 (2002), our Supreme Court stated: "[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences *by more than mere conjecture*, but need not demonstrate that these consequences are more probable than not." (Emphasis added.) Id., 208.

mootness doctrine is inapplicable.[7] The defendant's appeal from the pendente lite order is dismissed for lack of subject matter jurisdiction.

## II

## AC 30037

This appeal is from the judgment of dissolution. The defendant claims that Judge Bozzuto's decision regarding custody, as provided in her May 19, 2008 memorandum of decision, was unduly and improperly influenced by: (1) Judge Schofield's pendente lite order regarding exclusive possession of the marital home; (2) the January 31, 2007 pendente lite order of the court, *Hon. Kevin Tierney,* judge trial referee, regarding the requirement that the defendant seek employment; and (3) Judge Bozzuto's incorrect conclusions as to the minor child's medical condition.[8]

Before addressing the merits of the defendant's claims, we first note the applicable standard of review. "Our standard of review of a trial court's decision regarding custody [and] visitation . . . is one of abuse of discretion. . . . [I]n a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child,

[7] Because we conclude that the defendant fails to satisfy the second requirement, we need not analyze the third requirement, i.e., whether the question presented in the appeal is of public importance, as all three requirements must be satisfied for the exception to apply. See *Loisel* v. *Rowe,* supra, 233 Conn. 382–83.

[8] The defendant also claims that the pendente lite order regarding exclusive possession of the home was clearly improper and not within the court's discretion. The defendant concedes that this issue is the subject of AC 28172, and we have determined that that appeal is moot.

the court is vested with a broad discretion. . . . [T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"The trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 113 Conn. App. 177, 185–86, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009).

## A

The defendant first claims that the court's final custody decision[9] was unduly and unfairly influenced by the pendente lite order regarding exclusive possession, in abuse of the court's discretion. The defendant refers to the court's May 19, 2008 memorandum of decision as evidence in support of his claim.

[9] The defendant claims that "other critical decisions rendered by Judge Bozzuto" were improperly influenced as well. The defendant, however, fails to articulate these decisions in his appellate brief, and we will not attempt to guess as to which "critical" decisions he is referring.

General Statutes § 46b-56 (a) provides in relevant part: "In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make . . . any proper order regarding the custody, care, education, visitation and support of the children if it has jurisdiction . . . . Subject to the provisions of section 46b-56a, the court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . . (b) In making . . . any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. Such orders may include, but shall not be limited to: (1) Approval of a parental responsibility plan agreed to by the parents pursuant to section 46b-56a; (2) the award of joint parental responsibility of a minor child to both parents, which shall include (A) provisions for residential arrangements with each parent in accordance with the needs of the child and the parents, and (B) provisions for consultation between the parents and for the making of major decisions regarding the child's health, education and religious upbringing; (3) the award of sole custody to one parent with appropriate parenting time for the noncustodial parent where sole custody is in the best interests of the child; or (4) any other custody arrangements as the court may determine to be in the best interests of the child. . . ."

As previously stated, Judge Bozzuto awarded sole and primary residential custody of the minor children to the plaintiff and visitation to the defendant pursuant

to the following regular access schedule: "Every Wednesday after school, or if school is not in session, from 3 p.m. until 7 p.m. . . . Every other Friday after school, or if school is not in session, from 3 p.m., overnight until 3 p.m. on Saturday . . . . On weekends wherein the defendant does not have an overnight, then from Saturday at 3 p.m. to 8 p.m." The defendant also was awarded two nonconsecutive summer vacation periods with the children, five days duration each, one of the children's two school vacations, which occurred in February and April,[10] and certain holidays.[11]

Although it is true that the court, in its memorandum of decision, referred to the pendente lite order and to the evidence presented at trial as to the positive effect the plaintiff's exclusive possession of the marital home and the defendant's limited visitation had on the two minor children,[12] the court did not state that it was

[10] In the event that the children had only one week of vacation, the plaintiff was to have the children in odd years and the defendant in even years.

[11] The defendant was awarded Father's Day every year, Thanksgiving and Easter in odd numbered years and Christmas Eve and Christmas in even numbered years.

[12] Specifically, the court stated: "The plaintiff testified that prior to the court's [pendente lite order, the minor daughter] was a different child. She was insecure, timid and lacked confidence. . . . She experienced difficulty sleeping at night. Since the court's order of [October, 2006, the minor daughter] has shown behavior improvements. . . . [Also] [p]rior to the . . . order . . . [the minor son] was prone to multiple daily outbursts and uncontrolled temper tantrums. He would throw furniture, slam doors, punch holes in the wall . . . and had difficultly sleeping. . . .

"Since the defendant's removal from the marital residence, the plaintiff has noticed a dramatic change in [the minor son's] behavior. He is calm and more focused. Outbursts are rare, almost nonexistent. He completes his homework in a timely manner and sleeps without a problem. There was no evidence offered to refute the plaintiff's testimony relative to the children's behavioral improvements since the court's pendente lite custody and visitation order . . . . Actually, the evidence would support the finding that prior to the court's . . . order . . . the home was a pressure cooker, with the plaintiff overworked, the defendant chronically unemployed, the finances depleted, the house in shambles, the children out of control and the defendant oblivious to the fact that everything was falling apart around him. It would appear the children suffered the most amidst this chaos."

relying on the pendente lite order in fashioning its custody order.[13] In fact, the record reveals that the court instead relied heavily on the testimony of Ronald C. Naso, a psychologist who interviewed both parties extensively and administered to both a number of psychological examinations. In its memorandum of decision, the court quoted extensively from Naso's psychological report.[14] The court stated: "Naso's findings relative to the plaintiff and the defendant, which this court finds consistent with other evidence, do not bode well for successful coparenting, postdissolution. To the contrary, Naso essentially sets forth a psychological profile of the defendant that would currently rule out the possibility that the defendant is fundamentally capable of participating in the negotiation, compromise and deference often necessitated by parents joined in a postdissolution coparenting plan. Given the defendant's history of parenting, alone and in conjunction with the plaintiff, in addition to Naso's findings amongst other evidence, the court finds that it is not in the children's

[13] Notably, the two orders are not identical. The pendente lite order only gave the defendant visitation two nights per week. The final custody order gave the defendant two nights per week, one of which would be an overnight every other weekend, three weeks of vacation and certain holidays.

[14] The court quoted the following from Naso's report: "The more difficult issue is the parents' inability to communicate and the breakdown of trust between them. . . . [The defendant's] scrupulosity and rigidity can rather quickly deteriorate into negativism and obstruction when he is stressed, bringing any effort at cooperation to a standstill. Disagreements and differences of opinion threaten humiliation and prompt him [to] redouble his efforts to control, sometimes directly, often indirectly via withholding and uncooperative behaviors. Once locked into a position, he not only perceives his wife as vying for power, but fails to fully appreciate the traumatic consequences of his negativism for the children. However much [the parties] have suffered during this process pales in comparison to what the children have had to endure. . . . The examiner is less confident in the parties' ability to cooperate in decisions . . . . The parties have not yet found a way to resolve issues about which they disagree. It is foreseeable that when decisions (both major and minor) have to be made regarding the health and education of the children that the parents will not be able to resolve conflicts without outside intervention."

best interests that the plaintiff and the defendant have joint custody."

Contrary to the defendant's assertion, the memorandum of decision does not, in fact, indicate that the court was unfairly influenced by the pendente lite order so that it abused its discretion by failing to consider all relevant statutory criteria and the best interests of the children, as it was bound to do. Furthermore, to the extent that the court may have considered the positive effect the pendente lite order had on the children, we find no authority indicating that a trial court is prevented from considering as evidence facts that occurred as a result of a pendente lite order, even if that order is improper. It would have been irresponsible for the court, in making a best interests determination, to ignore that evidence, which included school reports and live testimony. As our Supreme Court has stated: "The trial court appropriately could consider any evidence or events that occurred through the close of trial. . . . Indeed, the [trial] court was bound to consider the [children's] *present* best interests and not what would have been in [their] best interests at some previous time." (Citation omitted; emphasis in original; internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 209–10, 796 A.2d 1141 (2002). Moreover, the defendant did not object to the presentation of that evidence during the trial, and, therefore, he should not now be allowed to contest the court's consideration of it. For these reasons, the defendant's first claim fails.

### B

The defendant's second claim is that Judge Bozzuto's misinterpretation of Judge Tierney's January 31, 2007 pendente lite order regarding the requirement that the defendant seek employment unduly and unfairly influenced her final custody decision.[15] We disagree.

---

[15] See footnote 9.

On January 27, 2007, the parties entered into a stipulation as to alimony and finances, pendente lite, which Judge Tierney approved and ordered on January 31, 2007. Paragraph seven of the stipulation stated: "The defendant shall provide to counsel for the plaintiff, through his attorney or, in the event that the defendant is representing himself pro se, from the defendant directly, on a monthly basis, any and all documentation evidencing his efforts to generate income including efforts to (1) restart and improve his consulting business, Silvermine Partners (2) obtain employment, including but not limited to evidence of interviews, employment solicitation records, his resume, (3) and/ or seek any other form of income."

Judge Bozzuto, in her May 19, 2008 memorandum of decision, stated: "It was the defendant's position at trial that the needs of the family and home prevented him from either working full-time or making [his business] a success. The court does not find the defendant's position credible. . . . [E]ven if the court were to believe the defendant's testimony that family obligations prevented him from engaging in full-time employment, the validity of that argument ended, if not by November, 2006, when the defendant vacated the marital residence . . . then certainly by January 29, 2007. By stipulation of the parties . . . the defendant was required to provide . . . documentation evidencing his efforts to generate income . . . . Not only did the defendant fail to comply with the mandates of this order, [but] when asked about the order, he testified that he wasn't under an obligation to look for employment after June 30, 2007. . . . What is clear to the court is: (1) the January 31, 2007 order is clear and unambiguous and *requires the defendant to seek employment* . . . (2) the defendant has not complied with this court order; (3) the defendant was not truthful in his testimony; and (4) the defendant has no present intention of becoming

gainfully employed . . . ." (Emphasis added; internal quotation marks omitted.)

The defendant argues that contrary to the court's assertion, the January 31, 2007 pendente lite order did not, in fact, require him to seek employment. Instead, it obligated him only to provide documentation *of any efforts* to obtain employment, to the extent efforts were made. The defendant states: "[T]he language clearly draws a distinction between reporting on job hunting and actual job hunting. The former was required, but the latter was not. . . . Judge Bozzuto's error here had serious impact on her decisions, as the defendant was cast in violation of a court order . . . ."

First, we fail to appreciate the distinction drawn by the defendant. When a court orders a party to provide documentation of his or her attempts to obtain employment, implicit in that order is the requirement that the party seek employment. Second, even if there is a distinction, so that the court did, in fact, misinterpret the stipulation, we fail to recognize the import of such a mistake. The defendant argues that he was "cast in violation of a court order . . . ." The court, however, did not hold the defendant in contempt for failure to follow the order; it merely noted that failure in its discussion regarding the defendant's employment background. Moreover, the defendant has failed to refer to, nor can we independently locate, anything in the record, evidence or memorandum of decision that shows that the January 31, 2007 stipulation, and the alleged misinterpretation of it, had any effect on the court's final order of custody. The defendant's second claim fails.

## C

The defendant's third and final claim is that the court's incorrect conclusions as to the evidence relating to the minor son's medical condition unduly and

unfairly influenced the final custody decision.[16] We disagree.

During the trial, the plaintiff testified that the minor son was currently taking an antibiotic for a medical condition he was diagnosed with at six years of age. Counsel for the defendant objected immediately to the plaintiff's providing any expert medical testimony with respect to the issue. The court ruled that the plaintiff could testify relative to what transpired between the parties in regard to the child's illness but could not testify as to the underlying medical condition. The plaintiff then testified that when the child was diagnosed with the condition, experts presented the parties with two options for treatment. The first option was for the child to take antibiotics for the rest of his life, and the second option was for the child to have surgery. The parties initially chose the second option, and a surgery was scheduled, but the defendant unilaterally cancelled it without giving notice to the plaintiff. The plaintiff further testified that she would still prefer that the child have the surgery so that he would not have to take antibiotics every day, but the defendant refuses this option. The plaintiff stated that the parties remain unable to reach a decision on this issue. Following an objection and a request by counsel for the defendant that this testimony be stricken, the court reiterated that it would only consider the testimony as historical evidence with respect to how the parties addressed issues with the children and engaged in decision-making, and not as to what the proper course of treatment should be.

In its May 19, 2008 memorandum of decision, the court stated: "Within one year after the defendant lost his job, the plaintiff believed her marriage to the defendant was over. It proved increasingly difficult for the

---

[16] See footnote 9.

parties to agree on anything. The plaintiff would appear to be one who is able to make a decision within a reasonable amount of time, as compared to the defendant, who can become mired or lost in the details and thus allow decisions to go unresolved and tasks unaccomplished. Joint decisions were made by default or the plaintiff would simply acquiesce to the defendant's demands. Whether it was a decision to have a flooded basement cleaned or a medical decision regarding the children, the defendant either dragged his feet or stubbornly committed to an unreasonable position. Most startling is the defendant's refusal to address [the minor son's medical] condition . . . . Surgery to repair the condition was scheduled in 2000, only to be unilaterally cancelled at the last minute by the defendant, never to be rescheduled. Without the surgery, [the minor son] is required to take antibiotics daily, which he has been doing now for a decade. The plaintiff, concerned about [her son's] condition and the prolonged consumption of antibiotics, continues to desire surgery for [the son]. The defendant has refused."

The defendant argues that the court "[i]n spite of [its] own admonition against concluding one way or the other during the trial . . . made dramatic and biased[17] conclusions against [him] and his parenting abilities based on [his] handling of the medical situation of [the minor son]. To the contrary, [the] defendant's handling of [the minor child's] medical situation was consistent with treatment options recommended by the medical experts consulted by the couple over the past decade. Furthermore, there was no evidence or testimony offered that suggested [the] condition was worsening or that the course of treatment was not working. In fact, [the child's] condition has progressed consistently

---

[17] The defendant, at oral argument, stated that he was not making any formal claim of bias against the court.

since it was diagnosed; he is in excellent physical condition . . . and just recently, a top medical expert suggested he could go off the antibiotics and do nothing else."

There is nothing in the record that indicates that the court considered the defendant's position on the minor child's medical condition in fashioning its custody order. It is clear from the memorandum of decision that the court complied with its previous ruling that the plaintiff's testimony as to the child's medical condition would be considered only as evidence of the parties' inability to reach mutual decisions. The court raised the issue of the child's medical condition as an example of the defendant's inability to coparent and to participate in decision-making with the plaintiff. The court's conclusions were amply supported by the testimony of the plaintiff, whom the court expressly found to be a credible and reliable witness. There is no evidence that the court made a judgment as to which treatment option was better or a determination that the first treatment option was not working and the child's condition was worsening. Most importantly, the record reveals no suggestion by the court that the defendant was an unfit parent because he preferred the first option. The defendant's third claim fails.

The appeal in AC 28172 is dismissed as moot. In AC 30037 the judgment is affirmed.

In this opinion the other judges concurred.