******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GORDON MERKEL *v.* MARLENE BALTIMORE HILL
(AC 41352)

Keller, Bright and Beach, Js.

*Syllabus*

The plaintiff filed a motion to modify orders of custody and visitation concerning the parties' minor child that had been issued in connection with a foreign judgment of dissolution. Thereafter, the plaintiff filed a motion to modify a parental access plan. The plaintiff claimed that the parties' circumstances had changed since the entry of the existing orders and requested that the trial court follow the recommendations contained in a comprehensive evaluation report that had been prepared by a family relations counselor one year earlier. At a short calendar hearing, the trial court and the parties confirmed that the sole motion scheduled to be heard and decided at the hearing was the motion to modify the parental access plan. Following the hearing, the court issued a memorandum of decision in which it modified the existing orders relating to the parental access plan and custody, and adopted the entirety of the recommendations in the report of the family relations counselor, who had testified at the hearing that because the report was prepared one year prior, the recommendations contained therein were outdated. On appeal to this court, the defendant claimed, inter alia, that the trial court violated her right to procedural due process when it modified the existing custody order without any notice and after a hearing at which it repeatedly was confirmed that the only issue was the modification of the parental access plan. *Held* that the trial court violated the defendant's procedural due process rights when it modified the custody order: that court modified the custody order without providing the parties with notice and a meaningful opportunity to be heard on that issue, as the court and both parties expressly and consistently had confirmed that the sole motion to be heard and decided at the hearing was the motion to modify the parental access plan, and the plaintiff conceded at oral argument before this court that modification of the custody order was improper; moreover, the trial court abused its discretion when it adopted the recommendations in the report of the family relations counselor under the circumstances here, where the recommendations in the report were stale and outdated, the family relations counselor was unable to answer questions about her report because she had not been subpoenaed and was unprepared, and she testified that such reports become outdated six months after completion because of the evolution of child development, and that she could not make present recommendations and would do a disservice to the minor child to say that the recommendations in her report were still valid.

Argued April 10—officially released April 26, 2019*

*Procedural History*

Motion by the plaintiff for, inter alia, modification of orders of custody and visitation as to the parties' minor child issued in connection with a foreign judgment of dissolution, and for other relief, brought to the Superior Court in the judicial district of Windham at Putnam; thereafter, the plaintiff filed a motion to modify the parties' parental access plan; subsequently, the court, *A. dos Santos, J.*, entered orders modifying the parental access plan and custody, and the defendant appealed to this court; thereafter, the court, *A. dos Santos, J.*, granted in part the defendant's motion to stay the proceedings, and the defendant filed an amended appeal. *Reversed; further proceedings.*

*Pamela S. Bacharach*, for the appellant (defendant).

*Gordon Merkel*, self-represented, the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Marlene Baltimore Hill, appeals from the postjudgment order of the trial court modifying the existing orders governing the parental access plan and the custody rights of the self-represented plaintiff, Gordon Merkel, with respect to the parties' minor child. On appeal, the defendant claims that the court's modification of the existing custody order violated her right to procedural due process under the United States constitution, and that the court abused its discretion by adopting the recommendations contained in a stale family relations report to modify both the existing custody and parental access plan orders. We agree and, accordingly, reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The parties, who never were married, have one child, who was born in December, 2008. In April, 2009, the defendant, who lived in Massachusetts at the time, filed a complaint in the Massachusetts Probate and Family Court seeking child support from the plaintiff, who lived in Connecticut. On October 1, 2013, after four years of litigation, the Massachusetts Probate and Family Court rendered judgment in accordance with the parties' stipulated agreement regarding the support, custody, and visitation of their child. Pursuant to that judgment, the defendant was awarded sole physical and legal custody of the child, the plaintiff was entitled to visitation in accordance with a detailed parental access plan, and the plaintiff was to make biweekly child support payments to the defendant. Sometime thereafter, the defendant moved to Connecticut.

On October 11, 2013, the plaintiff filed a certified copy of the Massachusetts judgment in the Connecticut Superior Court, and the trial court domesticated the Massachusetts judgment. See General Statutes § 46b-71.[1] On May 8, 2014, the plaintiff filed with the trial court a motion for modification of the existing orders relating to custody and visitation. On December 16, 2015, the plaintiff filed another motion to modify the custody and visitation orders. On February 3, 2016, the trial court referred the matter to the family relations division (family relations) of the Superior Court for a comprehensive evaluation. On December 7, 2016, the family relations counselor, Nancy E. Fraser, filed a comprehensive evaluation report (report). In her report, which was filed again on December 30, 2016, she recommended that the parties share joint legal custody of the child, that the defendant maintain primary physical custody, and a revised parental access plan that would increase the plaintiff's visitation with the child.

On September 7, 2017, the plaintiff filed a motion to modify only the parental access plan. In his motion, the

plaintiff maintained that the circumstances had changed since the entry of the existing orders in 2013, and he requested that the court follow the recommendations of the report on a temporary basis until a full trial could be held. Although there were several other pending motions to modify both the custody and parental access plan orders, and motions for contempt, only the plaintiff's September 7, 2017 motion was scheduled to be heard at the short calendar on October 11, 2017. On October 4, 2017, the plaintiff filed an application for the issuance of a subpoena to compel Fraser's appearance at the short calendar hearing, which was denied by the court on the same date.

At the outset of the October 11, 2017 short calendar hearing, the court identified that there were approximately three to eight motions and objections pending, but the sole motion scheduled to be heard that day was the plaintiff's September 7, 2017 motion to modify the parental access plan. The defendant's attorney agreed that the motion to modify the parental access plan was the only motion scheduled to be heard, and she orally requested a special assignment so that all of the pending motions could be heard on the same day, which the court denied. The court and both parties repeatedly confirmed throughout the hearing that the only motion that was to be heard that day was the plaintiff's motion to modify the parental access plan.

The plaintiff sought to introduce the report at the hearing. The defendant objected on the grounds that the report was stale and that Fraser had not been subpoenaed to be a witness. As to the staleness of the report, the plaintiff testified that "[e]verything has changed," including the child's "behavior, moving, [the defendant's] new job," the defendant's boyfriend, and the location of the police station used as a meeting point. As to the availability of Fraser, the court stated that she was available to testify because she was present in the courthouse at that time, working on other cases. The court overruled the objection and admitted the report as a full exhibit. After a short recess to permit the defendant's attorney to review the report for the first time, as she represented that it had been provided to prior counsel, the court then asked the plaintiff whether he agreed or disagreed with each of the twenty recommendations contained therein. The plaintiff testified that he agreed to a substantial majority of the recommendations. The defendant's attorney then cross-examined the plaintiff as to, among other things, his relationship with the child, the child's performance in school, and his interactions with the defendant.

Thereafter, the court made Fraser available to testify so that the defendant would have the ability to cross-examine her.[2] Fraser testified as to the general process with respect to the compilation of a report, but she testified that she could not opine as to the particulars

of the report at issue because she was not expecting to testify that day regarding the present case, her report had been completed almost one year ago, she had not reviewed the file, report, or notes, and she did not have the file or notes with her in court to refresh her recollection.

In response to a series of questions as to whether the recommendations made in her report were still her present recommendations, Fraser provided the following relevant testimony: "I have no basis for—it's a year old. I—I haven't spoken with anybody. I haven't—I don't know where the minor child, you know—how the minor child is doing. I don't know if the two parties have come to a different agreement. I have nothing to base a recommendation today on. . . . These are recommendations that I made in December of 2016 based on all of the evidence and all of the people that I spoke to at that time. . . . I can't make any recommendations for today." She also testified that she "was always under the assumption that our reports were outdated after six months because of child custody and access, and the child development changing. I mean, child custody and access is a—a living, breathing thing. We all know that. That's part of family law that makes it so difficult. . . . Children grow. Children's needs . . . change. What was in the best interest of a child a year ago may not be in the best interest of a child today. And, unfortunately, I find myself in a very tough predicament because while I wholeheartedly—I will stand by my recommendation and that it was based on good evaluative work, I—I have no basis to say that it's still valid for—for both mom and dad today. I—I would be doing a disservice to the minor child to say that. I can't say that." Thereafter, the defendant testified regarding her relationship with the plaintiff and the child.

On January 26, 2018, the court issued a memorandum of decision in which it modified the existing orders relating to the parental access plan *and custody*, and adopted the entirety of Fraser's recommendations from her stale report, with a few immaterial changes. The court held that Fraser's testimony "validated the report and her recommendations" and that, although her "report should be taken up soon after it [was] completed," the numerous court appearances and motions delayed that occurrence. The court also found that the report was "complete, thoughtful, and credible. No credible evidence was presented that the issues that the child ha[d] at school have been altered or have abated. Finally, the court accepts the family counselor's recommendations contained at the end of her report." This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the court improperly modified the existing orders relating to custody and the parental access plan. In support of her

claim, the defendant first argues that the court violated her right to procedural due process under the United States constitution because it modified the existing custody order without any notice and after a hearing at which it repeatedly was confirmed that the only issue was the modification of the parental access plan. Second, she argues that the court abused its discretion by adopting the recommendations contained in the report because Fraser specifically testified that the report was outdated and that her recommendations contained therein were not current.[3] We agree.

We begin with the standard of review and general principles relevant to the defendant's first argument. Whether the court violated the defendant's constitutional procedural due process rights is a question of law over which our review is plenary. *State* v. *Harris*, 277 Conn. 378, 394, 890 A.2d 559 (2006). "[F]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Citation omitted; internal quotation marks omitted.) *In re DeLeon J.*, 290 Conn. 371, 378, 963 A.2d 53 (2009). "A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the [f]ourteenth [a]mendment. . . . Before a parent can be deprived of her right to the custody, care, and control of her child, he or she is entitled to due process of law." (Internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 508, 72 A.3d 367 (2013).

In the present case, the court modified the existing custody order without providing notice to the parties and without providing them a *meaningful* opportunity to be heard on that issue. At the October 11, 2017 hearing, the court and both parties expressly and consistently confirmed that the sole motion scheduled to be heard and decided was the plaintiff's motion to modify the parental access plan. Indeed, at oral argument before this court, the plaintiff conceded that the court's modification of the custody order was improper. After thoroughly examining the record in the present case, we conclude that the court's modification of the custody order violated the defendant's procedural due process rights because its decision affected her fundamental right to custody of their child without providing notice to the parties and a *meaningful* opportunity to be heard.

We turn next to the standard of review and general principles relevant to the defendant's second argument.

"We utilize an abuse of discretion standard in reviewing orders regarding custody and visitation rights . . . . In exercising its discretion, the court . . . may hear the recommendations of professionals in the family relations field, but the court must ultimately be controlled by the welfare of the particular child. . . . This involves weighing all the facts and circumstances of the family situation. Each case is unique. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Lopes* v. *Ferrari*, 188 Conn. App. 387, 393,     A.3d     (2019).

In making its discretionary determination as to whether to modify an existing order relating to custody or a parental access plan, "the trial court is bound to consider the [children's] *present* best interests and not what would have been in [their] best interests at some previous time." (Emphasis in original; internal quotation marks omitted.) *Collins* v. *Collins*, 117 Conn. App. 380, 391–92, 979 A.2d 543 (2009); see *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 303–304, 536 A.2d 978 (court abused discretion by fashioning order based on past conduct and outdated evidence rather than present ability to parent), cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); compare *Balaska* v. *Balaska*, 130 Conn. App. 510, 518, 25 A.3d 680 (2011) (recognizing that "court's reliance on outdated information and past parental conduct in making or modifying orders concerning parental access may be improper," but concluding that court did not abuse its discretion where adequate current information in record to support orders).

In the present case, the court clearly abused its discretion by adopting the custody and parental access plan recommendations contained in the report, which Fraser testified were stale and outdated. Fraser first filed her report on December 7, 2016, the short calendar hearing was held ten months later on October 11, 2017, and the court's decision was not issued until January 26, 2018. At the hearing, Fraser was unable to answer specific questions about her report because she had not been subpoenaed and had no idea that she was going to testify that day, and, thus, she was unprepared to testify that day. Furthermore, she explicitly stated that she could not make any present recommendations because she would have nothing on which to base such recommendations, and that she "*would be doing a disservice to the minor child to say that*" her recommendations were still valid at the time of the hearing. (Emphasis added.) She also testified that she believed that reports, such as the one in the present case, become outdated six months after completion because of the constant evolution of child development. Notwithstanding the staleness of the report and the testimony of Fraser that it did not represent her present recommen-

dations, the court surprisingly found that Fraser's testimony "validated the report and her recommendations," and it adopted her stale recommendations as its own. The court's adoption of the recommendations taken from the outdated report constituted a clear abuse of discretion.

Finally, we recognize that the plaintiff has been seeking to modify the existing custody and parental access plan orders for approximately five years, and that the result of our decision will in all likelihood require family relations to conduct an updated or new comprehensive evaluation before a decision can be made on his motion to modify custody.[4] In light of the foregoing, we implore that this report be given priority and be completed as expeditiously as possible, and that a hearing on all motions to modify custody be scheduled immediately thereafter. In the meantime, we order that the court schedule as soon as possible a new hearing on the plaintiff's motion to modify the parental access plan.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

* April 26, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 46b-71 provides in relevant part: "(a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final . . . .

"(b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. . . ."

[2] Pursuant to Practice Book § 25-60 (c), the report was admissible, provided its author, Fraser, was available for cross-examination.

[3] The defendant also argues that the court lacked subject matter jurisdiction to modify the existing custody order because there was no motion to modify the custody order scheduled to be heard on October 11, 2017. This claim is without merit. Whether a motion is properly before a court at a particular proceeding at most raises the question of whether the court has authority to consider the motion and does not implicate the court's subject matter jurisdiction to decide the motion. See generally *Reinke* v. *Sing*, 328 Conn. 376, 389–92, 179 A.3d 769 (2018) (delineating principles of subject matter jurisdiction). Further, the defendant claims that the court abused its discretion in denying in part her motion to stay, which was filed with the trial court after she took this appeal; however, she expressly abandoned this claim at oral argument before this court.

[4] The defendant's counsel represented at oral argument before us that the defendant also is seeking to modify custody.