[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiff, mayor of Middletown, seeks against the commissioners and secretary of several state executive departments a declaratory judgment that the defendants have violated the Connecticut Environmental Policy Act (hereinafter CEPA), Conn. Gen. Stat. § 22a-1 et seq.; a preliminary and permanent order in the nature of mandamus requiring the defendants to comply with CEPA; a preliminary and permanent injunction forbidding the defendants to proceed with work at Connecticut Valley Hospital until the defendants prepare an Environmental Impact Evaluation, pursuant to CEPA.
The specific motion before this court is for a temporary mandamus and a temporary injunction pending a full trial.
The defendants have responded by a motion to dismiss on the ground the case raises non-justiciable questions and therefore the court lacks subject matter jurisdiction. That motion must be decided first.
Public Act 95-257 directed the commissioner of mental health and addiction services to develop and implement a plan for the closure of programs at Fairfield Hills Hospital and Norwich Hospital and to consolidate their programs with those at Connecticut Valley Hospital (hereinafter CVH). The cost is projected at twenty million dollars. To expedite the work, the Act specifically exempted from the project compliance with statutes requiring design professional services (§ 4b-58), CT Page 5261-BB competitive bidding for public building contracts (§ 4b-91), prior approvals of changes in services and staffing of health care institutions (§ 19a-154), and procedures related to approval of capital expenditures exceeding one million dollars (§ 19a-155).
The essence of defendants' motion to dismiss is that plaintiff's action challenges the legislature's decision to consolidate and raises a political question that is not capable of being adjudicated by judicial power.
It is well-settled that certain political questions cannot be resolved by the courts without violating the constitutional principle of separation of powers. Nielsen v. Kezer, 232 Conn. 65,74 (1995). The underlying characteristic of such questions is that some other branch of government has constitutional authority over the subject matter superior to that of the courts,Pellegrino v. O'Neill, 193 Conn. 670, 680, cert. den. 469 U.S. 875
(1984) and that adjudication would place the courts in conflict with that branch of government. Nielsen v. Kezer, supra, p. 74.
Defendants argue that the legislature has already determined the matter of consolidation of mental health services at CVH, and by this court deciding the issues raised by this case, it would be in conflict with that legislative determination.
The argument lacks merit for two reasons. First, while PA 95-257 mandates consolidation, it leaves to the defendants wide discretion on how to implement consolidation. The compliance with environmental laws that plaintiff seeks do not run counter to the legislative directive. Compliance and consolidation are complementary, not contradictory.
Second, while PA 95-257 specifically exempts the requirements of certain statutes from implementing consolidation, it notably does not exempt the environmental laws. In fact the legislative history of the Act reveals the Senate passed a version of the Act (Senate Bill 1164) that exempted CEPA in order to fast track the consolidation program. The House, however, amended the bill to remove the CEPA exemption and that amended bill became PA 95-257. Thus, the legislature clearly intended that consolidation would be achieved by complying with environmental laws.
The defendant's motion to dismiss is, therefore, denied. CT Page 5261-CC
Turning then to the motion for temporary injunction and mandamus, the court notes that the granting of a temporary injunction requires a showing of (1) irreparable harm, (2) inadequate remedy of law, (3) reasonable probability of success on the merits, and (4) balancing of the equities in favor of granting the motion. Waterbury Teachers Assn. v. Freedom ofInformation Commission, 230 Conn. 441, 446 (1994). However, where a plaintiff claims violation of a statute, as here, the plaintiff need not prove irreparable harm and lack of adequate remedy at law. Johnson v. Murzyn, 1 Conn. App. 176, 180-81 (1984). And where the statute invoked specifically provides for injunctive relief, as here at Conn. Gen. Stat. §§ 22a-15 and 22a-16 to ensure compliance with CEPA, the plaintiff has only to establish a violation of the statute and a balancing of the equities in its favor. Conservation Commission v. Price, 193 Conn. 414, 429-430
(1984).
The granting of a temporary order of mandamus requires proof that (1) plaintiff has a clear right to the performance of a duty by the defendant, (2) defendant has no discretion as to the performance of that duty, and (3) plaintiff has no adequate remedy at law. Vartuli v. Sotire, 192 Conn. 353, 365 (1984). When, however, the legislature provides for equitable relief upon violation of a statute, the plaintiff need not prove the third element. Conservation Comm. v. Price, supra, p. 429.
CEPA requires at § 22a-1b(b): "Each state department, institution or agency responsible for the primary recommendation or initiation of action which may significantly affect the environment shall in the case of each such proposed action make a detailed written evaluation of its environmental impact before deciding whether to undertake or approve such action." The environmental impact evaluation shall include the environmental consequences of the proposed action, alternatives to the proposed action, measures to minimize environmental impacts, and an analysis of short term and long term economic, social and environmental costs and benefits of the proposed action.
Section 22a-1c defines actions which may significantly affect environment as "individual activities or a sequence of planned activities proposed to be undertaken by state departments . . . which could have a major impact on the state's land, water, air, historic structures and landmarks. CT Page 5261-DD
Section 22a-1d provides that evaluations required by §22a-1c shall be submitted for comment and review to the Council on Environmental Control, department of environmental protection, Connecticut Historical Commission, and to the town clerk of the municipality affected. The evaluation shall be made public. The department, institution or agency making the evaluation, or a finding that the proposed action has no significant environmental impact, shall hold public hearing on its report if requested by twenty-five persons.
Section 22a-1e provides that the office of policy and management shall review all evaluations and findings to determine compliance with CEPA.
Section 22a-1b authorizes virtually any one, including a municipality, to bring a court action for declaratory and equitable relief to compel compliance with CEPA. Section 22a-19
extends that right specifically to prevent the unreasonable destruction of historic structures listed in the National Register of Historic Places as determined by the State Historical Preservation Board to contribute to historic significance.
CEPA regulations state:
 "An environmental impact evaluation shall be prepared as close as possible to the time an agency proposes an action. The evaluation shall be prepared early enough so that it can practically serve as an important contribution to the decision making process and shall not be used to rationalize or justify decisions already made." Conn. Agencies Regs. § 22a-1a-7(b).
The regulations define "action" which may significantly affect the environment, within the meaning of § 22a-1b(h) as an individual activity or a sequence of planned activities
initiated or proposed to be undertaken by an agency . . . Conn. Agencies Regs. § 22a-1a-1(2) (emphasis added).
The facts are as follows: During the hearing of this case the patients from Norwich and Fairfield Hills were being moved to CVH and a fair inference is that move has been completed. The result is to increase CVH patient population from 316 to 615 and its staff from 850 to about 1300. In anticipation of consolidation, Gerald Mullaney, chief executive officer of CVH had prepared a CT Page 5261-EE building disposition plan that designates buildings to be demolished and to be renovated. The plan has been approved by CVH in concept but awaits an engineering study as to feasibility. The building known as Merritt Hall is presently undergoing extensive renovation and when completed its patient population will increase from 160 to 200.
Some of the buildings designated to be demolished were in disrepair long before PA 95-257 was enacted and their demolition has nothing to do with consolidation. Other buildings designated to be renovated are essential to consolidation.
CVH has been conducting regularly meetings with architects and contractors relating to construction work to be done on the CVH campus. CVH has also had prepared a site plan that depicts substantial changes in roadways and parking. However, it is only a concept, is still being studied by a consulting firm and has not been approved nor have the changes contemplated been contracted for or funded.
The entire campus is designated as an Historic District in the National Register of Historic Places. CVH is consulting with the State Historical Commission about the demolition of historical buildings on campus.
The CVH sanitary sewer system needs repair and a consulting firm is assessing the necessity and the consequence of tying into the Middletown system. However, the present CVH sewage facilities are adequate to handle consolidation. The sewer issue is before the department of environmental protection and not related to consolidation.
Surface water from CVH flows over Middletown wellfields that provide drinking water for Middletown residents. The wellfield is a series of wells linked together and drilled into a water-bearing rock formation known as an aquifer. Demolition of buildings and reconstruction of roads on CVH campus could affect the quality of Middletown drinking water.
The plaintiff introduced evidence to attempt to show consolidation would have an impact on the area traffic and air quality but this court found that evidence unbelievable.
The evidence as to the social-economic consequences of consolidation on Middletown was credible. That evidence revealed CT Page 5261-FF that concentrating all state mental patients at CVH is likely to add to the homeless and drug-addicted population of Middletown, increase the town's general assistance and special education costs, require of it additional social services, and have an adverse impact on the downtown business district.
The defendants have undertaken no environmental assessment in connection with consolidation.
Our Supreme Court has clearly stated, "Our [environmental policy] statute is not cast in terms of administrative discretion, but speaks in mandatory terms." ManchesterEnvironmental Coalition v. Stockton, 184 Conn. 51, 68 fn. 20 (1981). The court went on to state that an environmental "impact statement is required whenever the project will arguably damage the environment." id. p. 67.
The procedure under CEPA is first for an agency to undertake an environmental assessment of a contemplated project. It may, as a result of that assessment, make a finding of no significant environment impact. That finding, pursuant to §§ 22a-1d and22a-1e is subject to a public hearing and review by the office of policy and management. If the agency finds a significant impact, it must continue its study and make a full environmental impact evaluation.
Under the facts of this case, an environmental assessment was not required at the single point a reconfiguration of the campus was at the conceptual stage, or when a predesign study of road work was contracted for, or when the interior of a single building was being renovated, or when a consultant was hired to advise on demolition of buildings. The court "must take a `common sense' approach" to the necessity for such an assessment. EasternConnecticut Citizens Action Group v. Dole, 638 F. Sup. 1297, 1299
(D. Conn. 1986).
However, when these individual activities are part of a sequence of planned activities proposed to implement consolidation, and when ongoing building renovations, contemplated road changes and demolition of historic and other buildings, and increased patient and staff population are so likely to have environmental and social and economic consequence, then an environmental assessment is called for. The time to do is "as close as possible to the time an agency proposes an action." Conn. Agencies Regs. § 22a-1a-7 (h). As the Supreme Court CT Page 5261-GG said in Town of Westport v. State, 204 Conn. 212, 220 (1987): "[T]he purpose of the Environmental Policy Act is to ensure systematic consideration of environmental risks at the early stage of planning, before the state commits its resources to a particular use of a site."
The CEPA regulations provide that preparation of environmental assessment or evaluation "shall not prevent an agency from conducting engineering, economic, feasibility and other studies which do not otherwise commit the agency to commence or engage in such action or limit the choice of reasonable alternatives." Conn. Agencies Regs. § 22a-1a-7
(h).
Based on the foregoing analysis, this court issues a temporary mandamus ordering the defendants to comply with CEPA by making an environmental assessment of the consolidation project and if it finds significant environmental impact, by making an environmental impact evaluation of that project. The court further issues a temporary injunction for the defendants to cease and desist from engaging in any further consolidation activities until it has made the assessment and/or evaluation, other than the studies permitted by Conn. Agencies Regs. § 22a-1a-7 (h) and with one further exception. The evidence was that shutting down the renovation work on Merritt Hall would cost the state close to two million dollars and endanger the safety of patients. Balancing the equities, as this court is permitted to do, the court excepts from its temporary injunction the renovation work in Merritt Hall. If since the hearing on these motions, other work has been commenced the stoppage of which would cause significant loss, the defendants are directed, by appropriate motion, to bring that to the attention of the court, and after a hearing, the court will determine whether or not to modify this temporary injunction accordingly.
Robert Satter State Judge Referee